OPINION
This is an appeal from a decision of the Stark County Court of Common Pleas, Family Court Division granting a divorce, division of property, spousal and child support and visitation.
Appellant raises four Assignments of Error.
 I THE TRIAL COURT ABUSED ITS DISCRETION AND ACTED CONTRARY TO LAW IN AWARDING DEFENDANT-APPELLEE THE PARTIES' STATE AND FEDERAL TAX REFUNDS AND ORDERING PLAINTIFF-APPELLANT TO ASSUME MORE MARITAL DEBT TO ACCOUNT FOR FIFTEEN THOUSAND DOLLARS ($15,000.00) DEFENDANT-APPELLEE BROUGHT TO THE MARRIAGE.
 II THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING DEFENDANT-APPELLEE SPOUSAL SUPPORT IN THE AMOUNT OF ELEVEN HUNDRED DOLLARS ($1,100.00) PER MONTH FOR THIRTY-SIX (36) MONTHS.
 III THE TRIAL COURT ERRED IN FINDING THAT THE PARTIES AGREED UPON RESIDENTIAL PARENT AND VISITATION.
 IV THE TRIAL COURT ERRED IN FINDING THAT THE PARTIES REACHED AN AGREEMENT AS TO THE DIVISION OF MARITAL PROPERTY.
 STATEMENT OF FACTS
The facts in this case are that the parties were married on April 20, 1991, with one child born thereafter on December 14, 1995.
At the time of marriage appellee was the owner of a home with significant equity.
The home was subsequently sold, the equity utilized to purchase a building site and a new home constructed.
Appellant, at the time of the marriage and until May 1, 1998, was employed at Applecreek Bank with annual earnings of $40,000.00. On such listed date he became a commissioned employee of Signature Mortgage. From 1998 to 2000 his earnings at Signature varied between approximately $40,000.00 and $110,000.00. In 2000 due to higher interest rates reducing mortgage applications, his earnings fell to $60,000.00. He also had additional income from sports refereeing.
During the marriage, appellee's income came from Magic Lawn Incorporated and as owner of an office cleaning business. The Magic Lawn employment is not full time.
Despite appellant's experience in the banking field, he engaged in excessive credit card and mortgage financing to support a lifestyle beyond their means. Appellee participated in this lifestyle.
Appellant's financial burden was accentuated by an admitted gambling habit. The extent of this was disputed in that appellee testified it was up to $5,000.00 per month while appellant stated it was $4,290.00 over a period of 1992 to 1997.
The trial court made certain orders with regard to personal property debt allocation, residential parent with visitation and division of marital property as to which appellant claims abuse of discretion and error in fact.
 I., II.
Assignments of Error One and Two argue that the trial court abused its discretion and will be addressed simultaneously.
In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
We also review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.3d 348.
The trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division.Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222, 459 N.E.2d 896.
Revised Code § 3105.171(C)(1) states:
 (C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
Appellee admittedly brought into the marriage a home equity which produced $32,000.00 on sale.
While there is dispute as to the extent of the gambling, the extensive abuse of credit is abundantly clear from the record.
The weight to be given evidence and the determination of credibility of witnesses are issues for the Judge, not the reviewing court.
As to spousal support, the court is guided by the requirements of R.C. § 3105.18(C)(1):
 C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
We must reject both the First and Second Assignments of Error as no abuse of discretion is apparent from the record.
 III.
The Third Assignment of Error concerns visitation rights. No shared parenting plan was provided to the court.
The parties agreed, however, that appellee would be the residential-custodial parent.
The decree of divorce recites an agreement reached between the parties as to visitation but the record fails to disclose an agreement.
In addition, appellant filed a Motion for Reconsideration as to visitation. Both appellant and appellee refer to the trial court's rulings from the bench but such was not journalized nor included in theNunc Pro Tunc Entry.
We must agree with the Third Assignment of Error, reverse and remand for journalization of the trial court's ruling on this subject.
 IV.
The Fourth Assignment of Error raises the fact that the decree references an agreement as to division of marital assets.
The record indicates that no such agreement exists even though there are references in the testimony from which inferences could be drawn supporting the trial court's conclusions. (T. at 31, 38, 39, 81 and 118).
While we find no abuse of discretion as to the trial court's division of marital assets from the testimony of the parties, we do find that the Decree bases such division on an agreement rather than pursuant to the trial court's consideration of the evidence.
We therefore sustain the Fourth Assignment of Error, reverse and remand for clarification of the basis of the trial court's decision on division of property.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Common Pleas Court, Stark County, Ohio is affirmed in part and reversed and remanded in part. Costs to Appellant.
Hon. John W. Wise, J. Hon. John F. Boggins, J. concur. Hon. Julie A. Edwards, P.J. dissents.